SHARPE, J.
— Neither defendant’s right of floatage nor plaintiff’s right to maintain a mill-dam on Paint Rock river has been questioned or made a subject of dispute in this cause. Assuming they had concurrent rights, the one to float timber and the other as a mill and land-owner to have his property protected from unnecessary and damaging displacement of water and obtrusions of floated timber, defendant was under the duty to use ordinary care in conducting its business in order that injury to plaintiff’s property from such causes might be averted.—Ala. Lumber Co. v. Keel, 125 Ala. 603; Witheral v. Muskegon, etc., Co., 68 Mich. 48, 13 Am. St. Rep. 325; Koopman v. Blodgett, 70 Mich. 610, 14 Am. St. Rep. 527.
In the record there is evidence which though disputed tends to show that defendant in floating timber during a flood suffered it to accumulate against some boom posts near plaintiff’s premises, in a large mass which broke part of his dam and diverted water from the course of the stream whereby plaintiff’s land was *556 washed, his fence demolished and drift wood was piled and scattered in his field. From this, and notwithstanding conflicting evidence, a case was made for the jury within the principle of Alabama Lumber Co. v. Keel, supra, where defendant’s predecessor in the same business was held for injuries similar- to those bare involved.
Injuries done in the Winter and 'Spring of 1899 and 1900 to plaintiff’s land from drifted timber and from washings are well within the complaint’s averments. If caused by negligence as the jury was at liberty to find, those injuries merited an award of at least nominal damages notwithstanding a lack of data from which to fix the amount of damages actually resulting from the drift referred to in the first refused charge, or from washing at the particular places mentioned in the second refused charge, or at the times stated in the fourth refused charge.
Plaintiff testified “defendant was doing business during ’98 and Spring of ’99 floating timber down Paint Bock river.” The court was, therefore, not authorized to assert as proposed by the third refused charge, that defendant began such business in December, 1899.
In actions on the case the test of whether damages are recoverable is not whether they are consequential, but whether they are remotely so. Damages the fifth charge would have excluded were not remote.
Floods such as from climatic and geographical conditions may reasonably be expected, whether of frequent or infrequent occurrence, must be taken into- consideration in estimating hazards attending the obstruction of water courses. The term act of God in its legal sense applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them.—So. R’y Co. v. Plott, at present term. That the flood referred to in-the seventh and eighth refused charges was of the latter class, was not proved. Moreover, these two charges ignore the tendency of the accumulated timbers to displace water from the river’s channel and thereby increase the overflow.
*557 Killings on demurrers to pleas assigned as error appear by record entries which are no more than recitals lacking the form and essential declarations of judgments on demurrers, and, therefore, do not support assignments of error.— Jasper Mercantile Co. v. O’Rear, 112 Ala. 247; Crawford v. Crawford, 119 Ala. 34.
Of charges given at plaintiff’s request, the first is a mere assertion of an absence of evidence which is justified by the record, and the others are not insisted on as erroneous.
Judgment affirmed.